**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NORWEGIAN AIR SHUTTLE ASA and   )
ARCTIC AVIATION ASSETS DAC,   )
   )
      Plaintiffs,   )   Civ. No. 1:20-CV-04108
   )
   v.   )
   )
THE BOEING COMPANY and BOEING   )
COMMERCIAL AVIATION SERVICES   )
EUROPE LIMITED,   )
   )
      Defendants.   )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

Adam J. Levitt
John E. Tangren
Brittany Hartwig
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
Facsimile: 312-253-1443
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
bhartwig@dicellolevitt.com

Dennis H. Tracey III
David R. Michaeli
**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, New York 10017
Telephone: 212-918-3524
Facsimile: 212-918-3100
dennis.tracey@hoganlovells.com
david.michaeli@hoganlovells.com

**Dated:** August 12, 2020

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF RELEVANT FACTS .......................................................3

    A.    Factual Allegations ................................................................3

    B.    Jurisdictional Facts Concerning the Parties ....................................3

    C.    Jurisdictional Facts Concerning the GoldCare Agreements ....................5

    D.    Procedural Status ..................................................................6

ARGUMENT ......................................................................................6

    I.    BOEING'S "SNAP REMOVAL" LOOPHOLE ARGUMENT SHOULD AGAIN BE REJECTED ..............................................6

        A.    Applicable Legal Standards ..............................................7

        B.    Statutory Text ..............................................................9

        C.    Allowing Snap Removal Would Eviscerate the Forum Defendant Rule in Illinois and Thwart Congressional Intent ........10

    II.    EVEN IF THIS COURT ACCEPTS BOEING'S "SNAP REMOVAL" ARGUMENT, REMAND IS PROPER BECAUSE DEFENDANTS HAVE NOT PRESENTED PLAUSIBLE GROUNDS TO DISREGARD BCASEL'S CITIZENSHIP ....................................12

        A.    The Standard for Showing a Fraudulent Joinder is Extremely High ....................................................................12

        B.    Personal Jurisdiction is Not a Basis to Claim Fraudulent Joinder ........................................................................13

        C.    Even if Considered, Defendants Cannot Show Fraudulent Joinder ........................................................................14

CONCLUSION ..................................................................................15

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Balcombe v. Unison Indus., LLC*,
   No. 09 C 5309, ECF Dkt. 49 (N.D. Ill Oct. 20, 2009) ............................................................13

*Bowman v. PHH Mortg. Corp.*,
   423 F. Supp. 3d 1286 (N.D. Ala. 2019) ................................................................................10

*Brokaw v. Boeing Co.*,
   137 F. Supp. 3d 1082 (N.D. Ill. 2015) ....................................................................................6

*Commerce Trust Co. v. Air 1st Aviation Cos., Inc.*,
   851 N.E.2d 131 (Ill. App. 2006) ..............................................................................................15

*Disher v. Citigroup Glob. Markets, Inc.*,
   486 F. Supp. 2d 790 (S.D. Ill. 2007) ........................................................................................8

*Gottlieb v. Westin Hotel Co.*,
   990 F.2d 323 (7th Cir. 1993) ...........................................................................................6, 12

*Gundy v. United States*,
   139 S. Ct. 2116 (2019) ............................................................................................................10

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ....................................................................................................................7

*Holmstrom v. Harad*,
   2005 WL 1950672 (N.D. Ill. Aug. 11, 2005) ...................................................................9, 10

*Jones v. Gen. Tire & Rubber Co.*,
   541 F.2d 660 (7th Cir. 1976) ....................................................................................................8

*Kern v. Krso*,
   2020 WL 3960509 (N.D. Ill. July 13, 2020) .......................................................................8, 12

*Livingston v. Hoffmann-La Roche Inc.*,
   293 F. Supp. 3d 760 (N.D. Ill. 2018) ......................................................................................14

*Lukas Mktg. v. Prince George's Cmty. Coll.*,
   2013 WL 5818592 (N.D. Ill. Oct. 29, 2013) ..........................................................................15

*Mitchell v. Philip Morris USA Inc.*,
   2019 WL 1787587 .....................................................................................................................8

*Morris v. Nuzzo*,
718 F.3d 660 (7th Cir. 2013) ........................................................................................7

*Portell v. Zayed*,
375 F. Supp. 3d 1025 (N.D. Ill. 2015) ..........................................................................6

*Poulos v. Naas Foods, Inc.*,
959 F. 2d 69 (7th Cir. 1992) ........................................................................................12

*In re Repository Techs., Inc.*,
601 F.3d 710 (7th Cir. 2010) ........................................................................................6

*Ross Bros. Const. Co. v. Sparkman*,
2006 WL 1519362 (S.D.W. Va. May 25, 2006) ..........................................................14

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999) ..........................................14

*Schur v. L.A. Weight Loss Centers, Inc.*,
577 F.3d 752 (7th Cir. 2009) ................................................................................13, 15

*In re Testosterone*,
67 F. Supp. 3d 952 (N.D. Ill. 2014) ............................................................................12

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*,
164 F. Supp. 3d 1040 (N.D. Ill. 2016) ........................................................................14

*Thompson v. Cottrell, Inc.*,
2010 WL 850183 (S.D. Ill. Mar. 8, 2010) ..................................................................13

*USIC, LLC v. Coffield*,
2017 WL 9533070 (S.D. Ind. Mar. 16, 2017)..............................................................13

*Villar v. Crowley Mar. Corp.*,
990 F.2d 1489 (5th Cir. 1993) ....................................................................................14

*Vivas v. Boeing Co.*,
486 F. Supp. 2d 726 (N.D. Ill. 2007) ......................................................................1, 11

*Wilmington Trust Co. et al., v. The Boeing Company et al.*,
No. 2:20-cv-00402-RSM-MAT (W.D. Wash. 2019)..............................................2, 4, 5

*Wirtz Corp. v. United Distillers & Vintners NA, Inc.*,
224 F.3d 708 (7th Cir. 2000) ........................................................................................7

*Wolf v. Kennelly*,
540 F. Supp. 2d 955 (N.D. Ill. 2008) ............................................................................8

*YA Glob. Inv., L.P. v. McKenzie Bay Int'l Ltd.*,
   2010 WL 398379 (D.N.J. Jan. 27, 2010) ................................................................. 14

*Zack Co. v. Howard*,
   658 F. Supp. 73 (N.D. Ill. 1987) .............................................................................. 8

**Statutes**

735 ILCS § 5/2-201 ...................................................................................................... 6

U.S.C. § 1441(b)(2) .................................................................................................. 6, 9

28 U.S.C. § 1447(d) ..................................................................................................... 9

Ill. Comp. Stat. Ann. 5/2-209 ................................................................................... 15

Plaintiffs Norwegian Air Shuttle ASA ("NAS") and Arctic Aviation Assets DAC ("Arctic") (collectively, "Norwegian") submit this brief in support of their motion to remand this action to the Circuit Court of Cook County, Illinois.

## PRELIMINARY STATEMENT

This case is properly remanded to state court on two separate and independent grounds: (1) Defendant The Boeing Company ("Boeing") is a forum defendant, barring removal under the forum defendant rule, and (2) the Parties are not diverse, eliminating subject matter jurisdiction.

Boeing acknowledges in its Notice of Removal that it is a forum defendant headquartered in Chicago, but claims Congress intended to allow forum defendants to evade the forum defendant rule if they remove prior to being served (so-called "snap removal"). Boeing tried an identical argument in another action in this District in 2007, and the Court rightly rejected it as unsupported by the federal removal statute and inconsistent with well-established law on the limited nature of diversity jurisdiction. *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 733 (N.D. Ill. 2007). This Court should do the same. Allowing a local defendant to dodge the forum defendant rule by removing before the Cook County Sheriff can effectuate service would flout the well-settled purpose of the removal statute, which is to limit federal diversity jurisdiction, and makes no sense.[1] It also disregards the well-settled rule requiring disputes over removability to be construed in favor of remand. For these reasons, multiple courts in this District and around the country have rejected the "snap removal" loophole to the forum defendant rule that Defendants rely on here.

Further, even if the Court were to accept Defendants' snap removal argument, remand would still be required because Defendants' feeble attempt to manufacture diversity jurisdiction

---

[1] Allowing Boeing to circumvent the forum defendant rule by filing a snap removal is especially inequitable during the COVID-19 pandemic, which has resulted in an even greater delay for the sheriff to effectuate service.

fails.   NAS and Arctic are both foreign corporations, and Boeing's co-defendant, Boeing Commercial Aviation Services Europe Ltd. ("BCASEL"), is also a foreign corporation.  As such, there is no diversity jurisdiction.  Defendants ask the Court to ignore BCASEL's citizenship under the fraudulent joinder doctrine due to a claimed lack of personal jurisdiction over BCASEL.  But a claim that personal jurisdiction is absent, without more, is not a basis for claiming fraudulent joinder—it is a ground for seeking dismissal that should be presented to and resolved by the Circuit Court of Cook County, where this matter belongs.

Procedural flaws aside, Defendants' fraudulent joinder argument fails on its merits. BCASEL is a party to contracts directly at issue in this lawsuit and is therefore properly joined as a defendant.  Defendants do not claim otherwise.  Their sole fraudulent joinder argument is that no personal jurisdiction could exist over BCASEL, but BCASEL's undisputed conduct demonstrates the opposite is true.  BCASEL contracted with Boeing to jointly deliver millions of dollars in maintenance services to Norwegian.[2]  That conduct alone subjects it to Illinois' long arm statute.   Further, BCASEL has myriad other contacts with Illinois, as it admits in the Defendants' Notice of Removal, and is directed by Boeing's leadership in Chicago.  BCASEL is part of Boeing's "Boeing Global Services" business[3]—which, as Boeing recently stressed to the U.S. District Court for the Western District of Washington, is a business unit whose leadership "reports to, is accountable to, and is directed by Boeing's President and CEO in Chicago."[4]  As

---

[2] NAS and Defendants are parties to Norwegian's 787 GoldCare Agreement.   NAS, Boeing, BCASEL and Boeing International Corporation, Spanish Branch ("BIC") are parties to Norwegian's 737 MAX GoldCare Agreement. BIC appears to be a division of Boeing.  *See Boeing International* https://www.boeing.com/company/key-orgs/boeing-international/, last accessed Aug. 12, 2020.  Norwegian is investigating whether BIC is a branch of a Chicago-based corporation incorporated in Delaware or a Spanish corporation.  If BIC is a separate legal entity, Norwegian will amend its complaint to include BIC as a defendant, likely either adding another foreign or forum defendant.

[3] *See Boeing Global Services*, https://www.boeing.co.uk/products-services/global-services.page, last accessed Aug. 12, 2020 (linking "Boeing Commercial Aviation Services Europe" as a new "Boeing Global Services" division).

[4] *See* Declaration of Koji Torihara ("Torihara Decl."), Boeing's Director of International Finance, filed by Boeing in *Wilmington Trust Co. et al., v. The Boeing Company et al.*, No. 2:20-cv-00402-RSM-MAT (W.D. Wash. 2019) ("*Wilmington Trust*"), attached as Ex. A.

such, BCASEL cannot possibly establish that there is no possibility it may be sued in Chicago under Illinois' long-arm statute—the standard Defendants would need to meet to establish fraudulent joinder. Remand is therefore proper and Norwegian's motion should be granted.

## STATEMENT OF RELEVANT FACTS

### A.   Factual Allegations

Norwegian filed suit in the Circuit Court for Cook County, Illinois on June 29, 2020, alleging fraudulent inducement, breach of contract, and declaratory judgment arising from Defendants' conduct relating to the 737 MAX and 787 aircraft. Compl. ¶ 3. Norwegian ordered 110 737 MAX aircraft and dozens of 787 aircraft from Boeing, with a combined value of billions of dollars. *Id*. ¶¶ 3; 233. Norwegian also contracted with Defendants to purchase millions of dollars in maintenance services (the "GoldCare Agreements.") *Id*. ¶ 252.

It has now come to light, however, that Defendants engaged in egregious misconduct that led to two fatal 737 MAX crashes and the worldwide grounding of the 737 MAX, destroying the value of the 737 MAX purchase and maintenance agreements and resulting in massive losses for Norwegian. *Id*. ¶¶ 1-20. Defendants also failed to deliver the 787s as promised and failed to honor the 787 GoldCare Agreement's terms. *Id*. ¶¶ 231-235. Boeing's conduct was fraudulent, grossly negligent, and in breach of Boeing's contractual obligations. Norwegian seeks rescission, damages, and a declaratory judgment affirming its right to cancel the remaining contracts.

### B.   Jurisdictional Facts Concerning the Parties

NAS is a public limited corporation, incorporated and existing under the laws of Norway, with its corporate headquarters and principal place of business in Fornebu, Norway. *Id*. ¶ 21. Arctic is a designated activity company incorporated and existing under the laws of Ireland, with its corporate headquarters in Dublin, Ireland. *Id*. ¶ 22.

3

Boeing is incorporated in Delaware, with its headquarters in Chicago, Illinois. Compl. ¶ 23. BCASEL is "a subsidiary of Boeing that is located in the United Kingdom to support airline customers in Europe and beyond" and "enters into contractual agreements with airline customers to manage aircraft maintenance and to provide other service such as spare parts planning and supply chain management." Dkt. 1 at ¶ 12. As stated on Defendants' websites, "Customers contract with BCASEL to receive services from Boeing's GoldCare,"[5] which Boeing provides through its Boeing Global Services ("<u>BGS</u>") business unit, directed by Boeing officers and employees in Chicago.[6] BCASEL's Goldcare services include managing maintenance programs, "spare parts planning, ordering and supplier management," and improving efficiency and reducing costs "through Boeing's extensive knowledge base and a carefully selected global network of maintenance, repair and overhaul providers," which requires regular communication between Defendants.[7]

Boeing acknowledges that its headquarters and principal place of business is in Chicago. Boeing has repeatedly stressed that it is a Chicago-run company that directs it global subsidiaries from Chicago. Boeing did so as recently as May 2020, arguing that the U.S. District Court for the Western District of Washington should not remand another lawsuit relating to the 737 MAX to Washington state court because Boeing's "nerve center" was in Chicago, Illinois, and not in Washington.[8] In opposition to that remand motion, Boeing submitted a Declaration by one of its attorneys, Eric Wolff, who stated that he had served as Boeing's counsel in "hundreds of cases" and that based on his "personal knowledge" and "review of Boeing's filings, as well as court records," he could attest that since 2010 "Boeing has taken the position that its 'nerve center' is

---

[5] *See* https://www.boeing.co.uk/products-services/global-services/bcasel.page?, last accessed Aug. 12, 2020.
[6] *See* BGS, https://www.boeing.com/company/about-bgs/index.page, last accessed Aug. 12, 2020.
[7] *See* https://www.boeing.co.uk/products-services/global-services/bcasel.page?, last accessed Aug. 12, 2020.
[8] Boeing's memorandum of law opposing remand in *Wilmington Trust* is attached as <u>Ex. B</u>.

in Chicago, Illinois." Wolff Decl. ¶¶ 1, 3.[9] Boeing also submitted a declaration from its director

of international finance, Koji Torihara, who asserted the following:

- "Since 2001, Boeing's corporate headquarters have been located at 100 North Riverside Plaza, Chicago, Illinois, which is a 36-floor skyscraper in downtown Chicago emblazoned with the Boeing corporate logo." Torihara Decl. ¶ 5.

- "The location of Boeing's headquarters is confirmed in its public filings with the Securities and Exchange Commission ('SEC'), which describe 100 North Riverside Plaza, Chicago, Illinois, as Boeing's 'Corporate Headquarters' and its 'principal executive offices.'" *Id*. ¶ 6.

- "Boeing's corporate bylaws likewise identify Chicago as the location of the 'Corporation's executive offices' and direct that all notices from shareholders to the company be sent there." *Id*. ¶ 7.

- "Boeing's official filing with the Washington Secretary of State's Corporations and Charities Filing System identifies '100 North Riverside Plaza, Chicago, IL' as Boeing's 'Principal Office Street Address.'" *Id.* ¶ 8.

- Boeing's Annual Meeting of Shareholders is held in Chicago, its corporate books and records are maintained in Chicago, and its SEC filings are prepared in, and investor relations activities are conducted in, Chicago." *Id.* ¶¶ 9-11.

- "All communications with, and activities of, Boeing's Board of Directors are coordinated and handled by Boeing's Office of the Corporate Secretary in Chicago." *Id*. ¶ 12.

- "Boeing's President and Chief Executive Officer ('CEO') is based in his office at Boeing's headquarters in Chicago. He leads a group of senior executives who report directly to him. That group, called the Executive Council, includes the senior leader of each of the company's three business units," one of which Torihara stated was BGS, "and each corporate function. The President and CEO and Executive Council make high-level strategic decisions for Boeing." *Id*. ¶ 13.

### C. <u>Jurisdictional Facts Concerning the GoldCare Agreements</u>

Defendants jointly contracted to provide millions of dollars in services to Norwegian.

Defendants are both parties and signatories to the 737 MAX GoldCare Agreement, which

collectively defines Boeing, BCASEL, and BIC as "Boeing" and thus makes all performance

---

[9] *See* Declaration of Eric B. Wolff ("<u>Wolff</u> <u>Decl.</u>") filed by Boeing in opposition to remand in *Wilmington Trust*, attached as Exhibit A to Plaintiffs' Motion to Remand ("<u>Mot.</u> <u>Ex.</u>").

obligations the shared obligations of those entities.[10]  Defendants are also parties to the 787 GoldCare Agreement, which similarly defines Boeing and BCASEL collectively as "Boeing" and does not delineate separate performance obligations.  Ex. C.  BCASEL thus contracted with an Illinois party to jointly provide the services at issue in this action to Norwegian.  Ex. C.

### D.    Procedural Status

Norwegian filed suit in the Circuit Court for Cook County, Illinois on June 29, 2020. Under Illinois law, "[p]rocess shall be served by a sheriff."  735 ILCS §5/2-201.  Before service could be completed by the Cook County Sheriff, Defendants filed a Notice of Removal.

### ARGUMENT

To establish removal jurisdiction, Defendants must show: (1) they can circumvent the forum defendant rule through snap removal; (2) lack of personal jurisdiction is a valid basis for claiming fraudulent joinder; and (3) there is "no possibility" that BCASEL might be subject to long-arm jurisdiction under Illinois law.  *Gottlieb v. Westin Hotel Co.,* 990 F.2d 323, 327 (7th Cir. 1993).  Defendants fail to establish even one of these requisite arguments.

### I.    BOEING'S "SNAP REMOVAL" LOOPHOLE ARGUMENT SHOULD AGAIN BE REJECTED

Under the federal removal statute, defendants that would otherwise qualify for diversity jurisdiction are nonetheless barred from removing a case where, as here, one of the defendants is a citizen of the state in which the action was filed.  28. U.S.C. § 1441(b)(2).  "[U]nless the basis for original jurisdiction is a claim 'arising under' federal law, removal is possible only if none of the defendants 'is a citizen of the State in which [the] action is brought.'"  *In re Repository Techs., Inc.*, 601 F.3d 710, 721–22 (7th Cir. 2010) (citing 28 U.S.C. § 1441(b)).

---

[10] Due to confidentiality provisions in the GoldCare Agreements, copies of the GoldCare Agreements have been filed under seal as Group "Ex. C."  As contracts referenced in the complaint, the Court may consider the GoldCare Agreements in connection with this motion.  *See Portell v. Zayed*, 375 F. Supp. 3d 1025, 1029, n.1 (N.D. Ill. 2019); *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1091 (N.D. Ill. 2015).

The purpose of this rule, known as the "forum defendant rule," is clear and well-settled. While the "primary rationale for diversity jurisdiction" is "to protect defendants against presumed bias of local courts," this rationale "is not a concern" and does not support permitting removal based on diversity when "at least one defendant is a citizen of the forum state." *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010) (holding "diversity jurisdiction's basic rationale" is "opening the federal courts' doors to those who might otherwise suffer from local prejudice against out-of-state parties"). Since removal is permissible only in narrow cases and is not needed where a defendant resides in the forum, forum defendants are not permitted to remove state court actions to federal court.

Application of the forum defendant rule is straightforward. Boeing acknowledges that it "is a citizen of Illinois." Dkt. 1 at ¶ 22. As such, it is a forum defendant, barring removal by any defendant. Boeing nonetheless demands that this Court not apply the forum defendant rule and, instead, construe the statutory text to create a highly illogical loophole that Boeing claims allows a forum defendant to remove if it does so prior to being served. While some courts have accepted this argument, the better reasoned decisions in this Circuit and District, and elsewhere across the United States, have rejected it as being contrary to Congress' clear intent, the statutory language, and settled rules of statutory construction. The authorities upon which Boeing relies are primarily from other Circuits and should not be followed in this case.

### A. <u>Applicable Legal Standards</u>

It is well-settled that "[t]he removal statute should be construed narrowly" and any doubts about the propriety of removing a particular action should be resolved against allowing removal." *Wirtz Corp. v. United Distillers & Vintners NA, Inc.,* 224 F.3d 708, 715–16 (7th Cir. 2000) (citing *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993); *Illinois v. Kerr–McGee Chem. Corp.,* 677 F.2d 571, 576 (7th Cir. 1982); *Shamrock Oil & Gas Corp. v. Sheets,*

313 U.S. 100, 108–09 (1941); *In re Application of County Collector of the County of Winnebago*, 96 F.3d 890, 895 (7th Cir. 1996)). "Congress did not intend[] by the removal mechanism to cause in the allocation of judicial business between state and federal courts, the wholesale stampede of cases into the federal district courts." *Jones v. Gen. Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976). For this reason, the Supreme Court has been "loathe to expand the federal court's removal jurisdiction" and "almost all Supreme Court decisions expounding the law of removal have been in the context of holding that removal was unwarranted." *Zack Co. v. Howard*, 658 F. Supp. 73, 76 (N.D. Ill. 1987).

Courts in this Circuit "follow a simple default rule in deciding unusual cases, namely, that doubts about the propriety of removal are to be resolved in favor of remand." *Disher v. Citigroup Glob. Markets, Inc.*, 486 F. Supp. 2d 790, 800 (S.D. Ill. 2007). Federal "courts must apply the removal statutes in a manner that carries out the intent of Congress to restrict removal, and that cases should be remanded if jurisdiction is doubtful.... It is abundantly clear that Congress has not vested in federal district courts the power to fashion equitable removal solutions to procedural complexities." *Id.* "Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing." *Wolf v. Kennelly*, 540 F. Supp. 2d 955, 959 (N.D. Ill. 2008). Thus, "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Id.* Additionally, the party seeking removal "bears the burden of establishing federal jurisdiction." *Mitchell v. Philip Morris USA Inc.*, 2019 WL 1787587, at *2 (N.D. Ill. Apr. 24, 2019).

Federal court rulings granting remand motions are not appealable in this Circuit. *See Kern v. Krso*, 2020 WL 3960509, at *3 (N.D. Ill. July 13, 2020) (rejecting the snap removal argument Boeing advances and noting that the Seventh Circuit affirmed prior rulings rejecting

snap removal); *see also* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise…"). Partly as a result, the Seventh Circuit has not directly addressed the snap removal issue that Boeing raises, although it has affirmed a number of rulings that rejected Boeing's position on other grounds.

### B.   Statutory Text

Section 1441 provides, "a civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).  According to Defendants, "Section 1441(b)(2)'s 'home state' bar on removal only applies to defendants that have been 'properly…served.'"  Dkt. 1 at ¶ 22. Under this interpretation, the statute—whose purpose is to *prevent* forum defendants from removing—should be read to *allow* a forum defendant to avoid the forum defendant rule and remove as long as it did so before the plaintiff served that defendant.  This is a nonsensical result—one that would encourage defendants to intentionally evade service in order to game the system and remove and that cannot be reconciled with the statute's purpose.

In fact, the statute prohibits diversity removal if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought," but is silent on *when* service must be completed to trigger the forum defendant rule.  Some courts have construed the language to require only that service be completed at some point prior to the remand motion being presented or decided, so as to prevent cases where a forum defendant is fraudulently joined to prevent diversity jurisdiction but never actually served.  For instance, in *Holmstrom v. Harad*, 2005 WL 1950672, at *2 (N.D. Ill. Aug. 11, 2005), the Court held that "[t]he 'joined and served' requirement makes sense…when one defendant has been served but the named forum defendant has not," because "a plaintiff should not be able to prevent a served

9

defendant from removing simply by naming, but not serving, a forum citizen as a defendant," but "[w]hen no defendant has been served, however, the non-forum defendant stands on equal footing as the forum defendant" and "the protection afforded by the 'joined and served' requirement is wholly unnecessary for an unserved non-forum defendant." *Id*. (holding "we will not apply the 'joined and served' requirement here because no Defendant has been served.").

Other courts have held that the statute merely provides that where a defendant resides in the forum, removal is not permitted until service is completed. *See e.g. Bowman v. PHH Mortg. Corp.*, 423 F. Supp. 3d 1286, 1290 (N.D. Ala. 2019), *appeal dismissed,* No. 19-14041-HH, 2020 WL 1847512 (11th Cir. Feb. 26, 2020) (rejecting the snap removal exception and finding that "the text assumes…that at least one party in interest has been properly joined and served. Thus, under this interpretation of the statute, when there is an in-state defendant, at least one defendant must have been properly joined and served before removing for diversity. The court finds this interpretation to be plausible, if not persuasive.").

Indeed, the mere fact that alternate interpretations of the statutory language are possible militates in favor of remand, since ambiguities in the removal statute must be construed against removal and in favor of remand.  For this reason alone, Norwegian's remand motion should be granted.

C.    **Allowing Snap Removal Would Eviscerate the Forum Defendant Rule in Illinois and Thwart Congressional Intent**

It is well-settled that courts do not interpret statutory text "in a vacuum."  *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (quotation omitted). Rather, statutory interpretation is a "holistic endeavor which determines meaning by looking not to isolated words, but to text in context, along with purpose and history." *Id.* (quotation omitted).

Construing the forum defendant statute to create a loophole for snap removals would clearly contradict Congress' established legislative purpose of eliminating diversity jurisdiction for forum defendants. *See e.g. Vivas v. Boeing Co.*, 486 F. Supp. 2d at 733 (holding that Boeing's snap removal argument, if accepted, "would provide a vehicle for defendants to manipulate the operation of the removal statutes" and "would be against what the courts have long understood to be Congress's intent."). In Illinois in particular, it would do even greater harm to Congress' intent. As a result of Illinois' unique requirement that service be effectuated by the sheriff rather than the plaintiff, *every forum defendant case in this state would be subject to removal,* eviscerating the forum defendant rule entirely in this state, while preserving it in states in which service can be accomplished quickly.

Several courts in this District have noted this problem, rejecting the argument that Boeing advances here. As the Court in *In re Testosterone Replacement Therapy Products* explained:

> Applying section 1441(b) in the [plain] manner...would result in the elimination of the forum-defendant rule in Illinois, at least for a vigilant defendant. As the Court has noted, Illinois law typically requires the county sheriff to serve summons. As a practical matter, this does not and cannot happen immediately, or anything close to it. If a plaintiff who filed a lawsuit in the Circuit Court of Cook County were to go from the clerk's office to the sheriff's office and request instantaneous service of summons on the defendant, the request would be dismissed out of hand. Even for the most diligent plaintiff, there will be a gap before process can be served, and this enables a vigilant defendant to beat the process server to the punch and remove the case to federal court. This results from the fact that recordkeeping and docketing technology is several generations ahead of the procedure and technology used to serve legal process. A case filed in the Circuit Court is entered into an electronic recordkeeping system perhaps not instantaneously, but close…
>
> .    .    .
>
> This technological disparity between the means of access to public records and the procedure for service of summons enables an Illinois defendant who expects to be sued frequently...to essentially render the forum-defendant rule a nullity. Congress, which enacted the forum defendant rule and the "joined and served" clause before the age of computers—not to mention the Internet—could not have foreseen or intended this outcome.

11

*In re Testosterone*, 67 F. Supp. 3d 952, 961–62 (N.D. Ill. 2014) (holding that the forum defendant rule barred removal even though service had not yet been made.). This reasoning was recently cited by another court in this District that rejected the snap removal exception. *See Kern*, 2020 WL 3960509, at *3–4 (holding "[w]e are also persuaded by the reasoning outlined in *In re Testosterone*" and that allowing a snap removal exception "would be contrary to Congressional intent and would eliminate the forum-defendant rule for vigilant defendants").

## II.   EVEN IF THIS COURT ACCEPTS BOEING'S "SNAP REMOVAL" ARGUMENT, REMAND IS PROPER BECAUSE DEFENDANTS HAVE NOT PRESENTED PLAUSIBLE GROUNDS TO DISREGARD BCASEL'S CITIZENSHIP

Even if the forum defendant rule did not preclude removal in this case, remand is still proper because Norwegian and BCASEL are foreign corporations, which destroys diversity jurisdiction. Defendants' sole argument is that the Court should "disregard the citizenship of parties improperly joined because personal jurisdiction is lacking" under the fraudulent joinder doctrine. Dkt. 1 at ¶ 10. This lone argument fails because BCASEL is a proper defendant. Courts in this District have repeatedly held that alleged lack of personal jurisdiction is an improper basis for claiming fraudulent joinder. Those courts that have considered an alleged lack of personal jurisdiction in connection with a fraudulent joinder challenge apply fraudulent joinder's high standard—one Defendants cannot even approach in this case.

### A.   The Standard for Showing a Fraudulent Joinder is Extremely High

A party claiming fraudulent joinder bears a "heavy burden" and must meet an exacting standard. *Poulos v. Naas Foods, Inc.,* 959 F. 2d 69, 73 (7th Cir. 1992); *Gottlieb,* 990 F.2d at 327. As Boeing's own cases hold, "[f]raudulent joinder is difficult to establish—a defendant must demonstrate that, after resolving all issues of fact ***and law*** in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos,* 959 F.2d at

73. (emphasis original). "A defendant faces a heavy burden to demonstrate that the joinder is fraudulent" and "some courts, including district courts within this circuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) (internal quotations omitted). A remand motion must be granted if the plaintiff shows "any reasonable possibility that the plaintiff could prevail against the non-diverse defendant." *Id*.

### B.     Personal Jurisdiction is Not a Basis to Claim Fraudulent Joinder

To defeat a remand motion based on fraudulent joinder, Defendants need to demonstrate that Norwegian cannot show any reasonable possibility of prevailing against BCASEL. Defendants offer nothing to satisfy this standard. They do not attempt to argue that Norwegian lacks viable claims against them. Instead Defendants rely solely on an alleged lack of personal jurisdiction over BCASEL. Multiple courts have held that a claimed lack of personal jurisdiction is not a ground for asserting fraudulent joinder—it is merely a basis for dismissal, which should be decided by the state court following remand. This is because "a lack of personal jurisdiction does not go to the merits of a plaintiff's claim, and thus does not show that they cannot establish a cause of action against the non-diverse Defendant." *Thompson v. Cottrell, Inc.*, 2010 WL 850183, at *3 (S.D. Ill. Mar. 8, 2010); *see also Balcombe v. Unison Indus., LLC*, No. 09 C 5309, ECF Dkt. 49 (N.D. Ill Oct. 20, 2009) (attached as Mot. Ex. D), *upheld on reconsideration*, 2009 WL 10738621, at *1 (N.D. Ill. Nov. 9, 2009) ("[Defendants] must show more" than "affidavits showing that they have virtually no contacts with Illinois, and thus the Court should disregard their foreign citizenship" – "namely, that after resolving all issues of fact and law in Plaintiff's favor, Plaintiff cannot establish a cause of action against the foreign Defendants."); *USIC, LLC v. Coffield*, 2017 WL 9533070, at *3 (S.D. Ind. Mar. 16, 2017), *report and recommendation*

*adopted,* 2017 WL 3048459 (S.D. Ind. July 19, 2017) (finding "[t]he Court's fraudulent joinder analysis must focus on the *viability* of Plaintiffs' claims," and whether personal jurisdiction exists "is a separate matter that should be decided by the court with subject matter jurisdiction."); *YA Glob. Inv., L.P. v. McKenzie Bay Int'l Ltd.*, 2010 WL 398379, at *4 (D.N.J. Jan. 27, 2010) (same).

Here, Defendants raise no arguments in their Notice of Removal other than a claimed lack of personal jurisdiction for why joinder of BCASEL—a signatory to contracts at issue in the litigation—satisfies the fraudulent joinder test so as to be improper. As such, Defendants have failed to properly invoke the fraudulent joinder doctrine, and no grounds exist for the Court to disregard the citizenship of these entities for diversity purposes.[11]

### C. Even if Considered, Defendants Cannot Show Fraudulent Joinder

Even if personal jurisdiction were a proper ground to raise fraudulent joinder, Defendants would still need to meet fraudulent joinder's high standard by showing "there is no possibility that [the state] courts could properly exercise specific jurisdiction over a nonresident defendant." *Ross Bros. Const. Co. v. Sparkman*, 2006 WL 1519362, at *3 (S.D.W. Va. May 25, 2006).

---

[11] Contrary to Defendants' assertions, courts do not "routinely disregard" the citizenship of parties over which personal jurisdiction is lacking in considering fraudulent joinder arguments. Dkt. 1 at ¶ 10. Rather, in rare instances, courts have elected to decide Rule 12(b)(2) motions before reaching remand motions. *See, e.g., Villar v. Crowley Mar. Corp.*, 990 F.2d 1489, 1494 (5th Cir. 1993), *abrogated by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998) (*en banc*), *rev'd*, 526 U.S. 574 (1999) (cited by Defendants) (holding a district court had discretion to decide a motion to dismiss for lack of jurisdiction before deciding a motion to remand). As the Supreme Court has held, however, "[c]ustomarily, a federal court first resolves doubts about its jurisdiction over the subject matter." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 119 S. Ct. 1563, 1567, 143 L. Ed. 2d 760 (1999). Boeing's other authorities prove the exception rather than the rule. *See Livingston v. Hoffmann-La Roche Inc.*, 293 F. Supp. 3d 760, 765 (N.D. Ill. 2018) (reviewing personal jurisdiction first because question of whether wholly unrelated claims against diverse defendants could be joined with claims against non-diverse defendants to defeat diversity jurisdiction raised a "difficult and novel subject matter jurisdiction question"); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040, 1045 (N.D. Ill. 2016) (reviewing personal jurisdiction first because doing so avoided "difficult and novel subject matter jurisdiction question" of whether a plaintiff as opposed to a defendant could be fraudulently joined to a case). When the only question is whether a defendant has been fraudulently joined due to a lack of personal jurisdiction, what is presented "is [a] straightforward subject matter jurisdiction issue based on diversity of citizenship" that does not warrant reversing the typical order of resolving a remand motion first. *YA Global Inv.s*, 2010 WL 398379, at *4.

14

Defendants cannot meet this high standard. Under the Illinois long-arm statute, specific jurisdiction exists over any out-of-state defendant who "transacts any business" in Illinois or who "mak[es] or perform[s]…any contract or promise substantially connected" 735 Ill. Comp. Stat. Ann. 5/2-209. This language has been held to extend jurisdiction to the fullest extent allowed under constitutional due process. *Commerce Trust Co. v. Air 1st Aviation Cos., Inc.*, 851 N.E.2d 131, 140 (Ill. App. 2006). A defendant has sufficient contacts to be subject to long-arm jurisdiction if it "created continuing obligations with a citizen of [Illinois]" or otherwise "accepted the privilege of conducting business within [Illinois]." *Id.* at 138. The test is whether the defendant "should have reasonably anticipated being haled into court in Illinois." *Lukas Mktg. v. Prince George's Cmty. Coll.*, 2013 WL 5818592 at *4 (N.D. Ill. Oct. 29, 2013).

BCASEL admits that it has "contacts with Illinois in relation to this suit," claiming only that they are "inadequate." Dkt. 1 at ¶ 13. The Goldcare Agreements show that BCASEL partnered with Boeing to sell millions of dollars in services to Norwegian. Ex. C. The facts show that BCASEL is run by a team directed and managed by Chicago-based executives. Defendants cannot meet their "heavy burden" of demonstrating that there is no "reasonable possibility" that Norwegian could establish personal jurisdiction over BCASEL. *Schur,* 577 F.3d at 764. Accordingly, remand is appropriate.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Norwegian respectfully requests that the Court grant its motion and remand this action to the Circuit Court of Cook County, Illinois.

Dated:  August 12, 2020                         Respectfully submitted,

                                               /s Adam. J. Levitt

Adam J. Levitt
John E. Tangren
Brittany Hartwig
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
Facsimile:  312-253-1443
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
bhartwig@dicellolevitt.com

Dennis H. Tracey III
David R. Michaeli
**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, New York  10017
Telephone:  212-918-3524
Facsimile:  212-918-3100
dennis.tracey@hoganlovells.com
david.michaeli@hoganlovells.com

***Counsel for Plaintiffs***

16