**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NORWEGIAN AIR SHUTTLE ASA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 20-cv-04108 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| THE BOEING COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Norwegian Air Shuttle ASA and Arctic Aviation Assets DAC (together, "Norwegian") operate airlines. Defendants The Boeing Company and Boeing Commercial Aviation Services Europe Limited ("BCASEL," and together with The Boeing Company, "Defendants") manufacture, sell, maintain, and service aircraft. Norwegian originally brought this suit for breach of contract in the Circuit Court of Cook County, Illinois, alleging that Defendants breached contracts relating to the sale, maintenance, and servicing of airplanes. Defendants removed the case to this Court before any Defendant had been served. Now before the Court is Defendants' motion to dismiss BCASEL from the case for lack of personal jurisdiction (Dkt. No. 17) and Plaintiffs' motion to remand the case to state court (Dkt. No. 23). For the reasons stated below, the Court grants Plaintiffs' motion and denies Defendants' motion as moot.

## BACKGROUND

This case began in the Circuit Court of Cook County, Illinois, where Norwegian filed a complaint for breach of contract against The Boeing Company and BCASEL. The complaint alleges that Defendants breached contracts to provide 737 MAX airplanes to Norwegian and to service and maintain those airplanes. The Boeing Company is a citizen of Illinois, while BCASEL

and Norwegian are foreign corporations. (Notice of Removal ¶¶ 5, 9, Dkt. No. 1.) Just two weeks

after the case was filed—and before any Defendant had been served—Defendants removed the

case to this Court pursuant to 28 U.S.C. § 1441 based on federal diversity jurisdiction. In support

of removal, Defendants contend that Norwegian improperly named BCASEL as a Defendant

solely to defeat diversity jurisdiction, since foreign corporations are not considered diverse parties

for jurisdictional purposes. Defendants further claim that BCASEL only provides maintenance

and repair services outside of the United States and has no connection to Illinois in relation to this

case. (Mot. to Dismiss, Ex. A, Decl. of John Palmer ¶¶ 13–14, Dkt. No. 18-1.)

## DISCUSSION

The motion to remand and motion to dismiss both raise the question of whether the Court

has personal jurisdiction over BCASEL. But the motion to remand also challenges whether

removal was precluded by The Boeing Company's Illinois citizenship. If the Court remands the

case on this question of forum citizenship, it will not need to reach the question of personal

jurisdiction. In sequencing these threshold questions, the Court considers the dignity of state

courts and concerns of judicial economy and restraint. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S.

574, 586 (1999).

The parties' motions both raise the question of personal jurisdiction over BCASEL but in

different postures. Defendants present the question in its more typical form: does the Court have

personal jurisdiction over BCASEL, a foreign defendant? Defendants contend that because

BCASEL lacks meaningful ties to Illinois, it cannot be haled into an Illinois court. In response,

Norwegian asserts that BCASEL's foreign citizenship defeats diversity jurisdiction because

Norwegian is a foreign corporation and diversity jurisdiction does not arise between foreign

persons.

Further, Norwegian asks that the Court's jurisdiction over BCASEL be evaluated under the "fraudulent joinder" standard for a motion to remand instead of the motion to dismiss standard. Under the fraudulent joinder standard, Defendants must meet the higher burden of showing either that Norwegian's factual allegations in support of jurisdiction are false or that Norwegian's claims against BCASEL have no chance of success, with questions of fact and law resolved in Norwegian's favor. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). As presented, these arguments raise "issues on which there is no controlling Seventh Circuit precedent, such as whether the fraudulent joinder doctrine applies where the alleged deficiency in the joined claim involves a non-merits issue like personal jurisdiction." *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 164 F. Supp. 3d 1040, 1045 (N.D. Ill. 2016). Resolving this conflict would require the Court to rule on novel questions of law relating to fraudulent joinder doctrine and comprehensively parse Norwegian's factual allegations.

Rather than proceeding directly to the question of its personal jurisdiction over BCASEL, the Court instead begins its analysis with The Boeing Company's Illinois citizenship. This issue involves the "forum defendant" rule, which generally prevents defendants that are citizens of the forum state from removing a state lawsuit to federal court under diversity jurisdiction. *See* 28 U.S.C. § 1441(b)(2). Here, the critical facts are not debated: The Boeing Company is a citizen of Illinois and Norwegian's complaint raises only state law claims. The only question to be resolved is whether the forum-defendant rule prevents removal when no defendants have been served. If the Court began by addressing personal jurisdiction, it might dismiss BCASEL from this matter and then remand the case based on the forum-defendant rule, leaving the state court in the awkward position of inheriting this Court's personal jurisdiction ruling. *See Marathon Oil*, 526

U.S. at 585–86 (explaining that pre-remand decisions by federal courts bind state courts in subsequent proceedings). If this case is to be remanded, the Court would prefer not to bind the state court unnecessarily on substantive issues. *C.f. Marathon Oil*, 526 U.S. at 585 ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

The forum-defendant rule provides as follows: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Norwegian contends that The Boeing Company's Illinois citizenship precludes removal of this matter, while Defendants assert that the forum-defendant rule does not apply because the case was removed before The Boeing Company was served.

Numerous district and circuit courts have addressed whether a forum defendant may remove a diversity case prior to service, although the Seventh Circuit has issued no controlling precedent on the issue. *See Grandinetti v. Uber Techs., Inc.*, No. 19 C 05731, 2020 WL 4437806, at *5 (N.D. Ill. Aug. 1, 2020) (listing cases). Pre-service removal is often referred to as "snap removal" because it involves quickly filing for removal before service can be made. It has been observed that snap removal is more likely to occur in jurisdictions like Cook County, Illinois, where state law requires service to be initially attempted by the Sheriff's Office. The dynamics of snap removal in Cook County have been described as follows:

> Illinois law typically requires the county sheriff to serve summons. As a practical matter, this does not and cannot happen immediately, or anything close to it. If a plaintiff who filed a lawsuit in the Circuit Court of Cook County were to go from the clerk's office to the sheriff's office and request instantaneous service of summons on the defendant, the request would be dismissed out of hand. Even for the most diligent plaintiff, there will be a gap before process can be served, and

4

this enables a vigilant defendant to beat the process server to the punch and remove the case to federal court.

*In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 67 F. Supp. 3d 952, 961 (N.D. Ill. 2014). Thus, the validity of snap removal has significant implications for plaintiffs and defendants in Cook County, especially for larger entities that regularly face state court lawsuits from out-of-state defendants. *Id.* at 961–62 ("[The] technological disparity between the means of access to public records and the procedure for service of summons enables an Illinois defendant who expects to be sued frequently . . . to essentially render the forum-defendant rule a nullity.").

Many courts have endorsed snap removal, reasoning that the plain language of 28 U.S.C. § 1441(b)(2) does not prohibit it. Other courts have rejected snap removal; some of those courts have held that the rule's language is ambiguous and can be read to disallow snap removal, while others have found that the language seems to allow snap removal but nonetheless reject that result as absurd and contrary to statutory intent.

Cases endorsing snap removal—that is, holding that forum defendants are not prohibited by 28 U.S.C. § 1441(b)(2) from removing cases so long as they have not been served—emphasize the portion of the statute stating that cases "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id*. Those cases hold that that the forum-defendant rule prevents removal only when a forum defendant has been properly joined ***and*** served. The Second, Third, and Fifth Circuit Courts of Appeals have all endorsed this reading of the text, finding the language to be unambiguous. *Tex. Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest.*

*Inc.*, 902 F.3d 147, 152 (3d Cir. 2018).[1] Some courts in this District have followed suit. *See, e.g.*, *Grandinetti*, 2020 WL 4437806 at *5 (Section 1441(b)(2) "leaves no wiggle room: removal is barred only when 'any properly joined and served' defendant is a forum citizen."); *D.C. (a minor) v. Abbott Labs. Inc.*, 323 F. Supp. 3d 991, 996–97 (N.D. Ill. 2018).

Some courts rejecting snap removal hold that although a literal or technical reading of the statutory language allows snap removal, the practice is nevertheless inconsistent with the purpose of the forum-defendant rule and is therefore prohibited. *See Holmstrom v. Harad*, No. 05 C 2714, 2005 WL 1950672, at *2 (N.D. Ill. Aug. 11, 2005) ("[T]he protection afforded by the 'joined and served' requirement is wholly unnecessary for an unserved non-forum defendant."). Other courts hold that the forum-defendant rule is ambiguously written because the clause referring to "any of the parties properly joined and served" can be read to require service of at least one defendant. As one court states, "any" means "one or more . . . from all of a kind," which "assumes the kind exists—that at least one party in interest has been properly joined and served." *Bowman v. PHH Mortg. Corp.*, 423 F. Supp. 3d 1286, 1290 (N.D. Ala. 2019); *see Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 318 (D. Mass. 2013); *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1369 (N.D. Ga. 2011).

The Court is bound to follow unambiguous statutes as written. *See United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) ("If the statutory language's plain meaning is unambiguous, [the Court's] inquiry ends there."). However, courts do not read statutes "in a vacuum" but instead evaluate "text in context, along with purpose and history." *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019). The Court finds that the language of the forum-defendant

---

[1] Defendants contend that the Sixth Circuit has also endorsed snap removal but mistake the cited case's dicta for its holding. The case they cite did not reach the question of whether an unserved resident defendant could properly remove an otherwise diversity-eligible case. *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001).

rule is ambiguous. The rule is silent as to when a forum defendant must be properly joined and served to defeat removal. It does not plainly state that a forum defendant may remove a case before any parties are served, although that is one plausible reading of the text. Further, it is plausible to read the forum-defendant rule's clause regarding "any defendant" as requiring that at least one defendant be properly joined and served prior to removal on diversity grounds, as described above.

In interpreting the forum-defendant rule, the Court considers which reading "produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). Here, the broader context is Congress's intention to "abridge the right of removal." *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 10 (1951); *see also Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) ("Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum."). Generally, the forum-defendant rule acts as a limit on federal diversity jurisdiction. The justification for diversity jurisdiction—protecting out-of-state defendants against local prejudices—is not at issue when the defendant is a citizen of the forum state. *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013). The rule also defers to a plaintiff's choice of forum. *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 380 (7th Cir. 2000) (Forum defendant rule "preserve[s] the plaintiff's choice of a (state) forum, under circumstances where it is arguably less urgent to provide a federal forum to prevent prejudice against an out-of-state party.").

There are two plausible readings of the forum-defendant rule. The first, allowing snap removal, narrowly prevents removal only when a state forum citizen defendant has been served. The second, rejecting snap removal, broadly prevents removal in cases with state forum citizen defendants except when the plaintiff chooses not to "properly join and serve" those parties by

7

improperly joining parties with no connection to the case or improperly delaying service. The second reading better achieves the goals of the forum-defendant rule and is consistent with the statutory scheme. Consider 28 U.S.C. § 1446(b)(1), which gives defendants 30 days to remove a diversity case following service or notice of the lawsuit. This subsection locks defendants into state court unless they promptly move for removal following service. If a plaintiff could invoke the forum-defendant rule simply by naming any forum-state defendant, that plaintiff could lock otherwise diversity-eligible cases into state court by serving only the out-of-state defendants, waiting for their 30-day removal period to expire, and then dismissing the forum-state defendants. If snap removal is allowed, this loophole is closed but anther one opens: the entire forum-defendant rule can be subverted by any defendant who has the resources to monitor state court filings closely and seek removal prior to service of any defendants. On this reading, parties are incentivized to evade service to gain a tactical advantage in forum selection. But if snap removal is rejected, the loophole involving improper joinder is closed but forum defendants are not incentivized to avoid removal by evading service. The Court adopts this reading of the forum-defendant rule.

Even if the plain language of the forum-defendant rule allowed for snap removal, the Court could still disallow snap removal if it found that a literal reading of the rule produced an absurd result. *Jefferson v. United States*, 546 F.3d 477, 483 (7th Cir. 2008) (courts must "give [a statute's] words their plain meaning unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." (internal quotation marks omitted)). And considering the intent of the forum-defendant rule—which goes to the genuine interests and citizenship of the parties, not how quickly they are served with process—the Court concludes that the loophole for which Defendants advocate would lead

to an absurd result, inconsistent with the statutory purpose. *See Kern v. Krso*, No. 1:20-CV-01404, 2020 WL 3960509, at *3 (N.D. Ill. July 13, 2020) ("[A] hyper technical plain reading of the 'joined and served' language would 'frustrate the consistent efforts of both Congress and the courts to determine diversity jurisdiction based on the genuine interests of the parties to the controversy.'" (quoting *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734 (N.D. Ill. 2007)).

Defendants rely heavily on opinions from the Second, Third, and Fifth Circuits. Those opinions find it reasonable (or at least not absurd) that the forum-defendant rule allows defendants to remove cases before service is effected on any party. One case notes that such a reading "provide[s] a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant." *Gibbons*, 919 F.3d at 706; *see also Tex. Brine*, 955 F. 3d at 486 ("In our view of reasonableness, snap removal is at least rational."); *Encompass*, 902 F.3d at 153 ("Congress' inclusion of the phrase 'properly joined and served' addresses a specific problem—fraudulent joinder by a plaintiff—with a bright-line rule."). The Court finds these decisions unpersuasive primarily because they narrowly focus on a short clause within the forum-defendant rule— "properly joined and served"—without fully considering the rule's purpose. As discussed above, the snap-removal loophole essentially writes the forum-defendant rule out of existence for any defendants with the resources and wherewithal to monitor exhaustively local court filings. Further, the Court finds ambiguity in the statutory text of the forum-defendant rule, while the plaintiffs did not present an argument for textual ambiguity in *Texas Brine* and *Gibbons*.

Defendants raise other arguments for their preferred reading of the forum-defendant rule. First, Defendants contend that Congress endorsed snap removal by failing to revise § 1441(b) in 2011 when making other related statutory revisions. However, the Court sees no reason that

Congress's inaction on the question should be read as an endorsement. *See Testosterone Replacement Therapy*, 67 F. Supp. 3d at 960 ("Congress's silence on the topic is just that— silence. It is not commentary on the accuracy of one interpretation as opposed to another."). Second, Defendants contend that the Court's interpretation of the forum-defendant rule creates a conflict with 28 U.S.C. § 1448, which allows service to "be completed or new process issued" under federal procedure as to any unserved defendants in a removed case. Statutory provisions should be interpreted to avoid intra-statutory conflicts. *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 544 (7th Cir. 2003). But here, the Court finds no conflict. Section 1448 does not directly address pre-service removal but only states that defendants may be served post-removal under federal procedure. The language is consistent with a reading of § 1441(b)(2) that prevents forum defendants from removing a case before any defendant has been served.

Having held that the forum-defendant rule does not allow for snap removal under the circumstances presented in this case, the Court grants Norwegian's motion to remand and does not reach the other arguments addressing remand or personal jurisdiction.

## CONCLUSION

For the reasons given above, the Court grants Norwegian's motion to remand. This case is therefore remanded to the Circuit Court of Cook County, Illinois. Defendants' motion to dismiss is denied as moot.

ENTERED:

Dated:  March 30, 2021

_____
Andrea R. Wood
United States District Judge